**J. Michael BECKER, D. C., Plaintiff,**

v.

**Stephen B. RUSSEK, Defendant.**

**Civ. A. No. 81–0100(R).**

United States District Court,
W. D. Virginia,
Roanoke Division.

July 15, 1981.

C. Jacob Ladenheim, Wiegandt, Ladenheim & Campbell, Fincastle, Va., for plaintiff.

Julia Krebs, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM OPINION

DALTON, District Judge.

Plaintiff J. Michael Becker, a licensed Doctor of Chiropractic practicing in Roanoke, Virginia, brings the present action to recover from injuries resulting from the defendant's alleged violations of the plaintiff's civil rights. Additionally, the plaintiff seeks redress for alleged violations of the common law of Virginia, as ancillary to the plaintiff's primary federal claim. Seeking both injunctive and monetary remedies, the plaintiff invokes the jurisdiction of this court on the federal issue pursuant to 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1331, seeking redress as provided by 42 U.S.C. § 1983 (hereafter § 1983). The state claims are appended to the federal claim pursuant to this court's pendent jurisdiction.

The pertinent facts alleged by the plaintiff in this case are as follows. The plain-

tiff is a resident of the State of Virginia and is a licensed Doctor of Chiropractic under the laws of Virginia. The defendant, Stephen B. Russek, has been employed since 1971 as an investigator for the Virginia State Board of Medicine, vested with authority under the color of Virginia law to make reasonable investigations of alleged improprieties in the conduct of those engaged in providing health care. The plaintiff asserts that for the duration of the defendant's term in office, he "willfully and maliciously committed acts of insidious discrimination." Additionally, the plaintiff contends that the complained of acts, which are expected to continue barring relief by this court, were perpetrated "with the willful and malicious intention of grossly disregarding the plaintiff's constitutional rights of due process and equal protection." *See Plaintiff's Complaint*, p. 3.

Somewhat particularizing the broad allegations recited above, the plaintiff contends that the deprivations were caused by the defendant's unreasonable actions of "solicitation, interference, counseling, meeting with and otherwise contacting patients of plaintiff who had made no complaint, inquiry, nor any contact whatsoever with the State Board of Medicine." *See Plaintiff's Complaint*, p. 4. Further in his complaint, the plaintiff alleges that the defendant has contacted patients of the plaintiff who have not filed a complaint with either the defendant or with the State Board of Medicine. It is also alleged that the defendant solicited "others" to contact patients of the plaintiff who had not filed a complaint with the defendant or the Virginia State Board of Medicine. It is contended that in the course of the defendant's investigation, he made efforts to discourage, coerce, and intimidate the plaintiff's patients and endeavored to dissuade them from continuing to seek the plaintiff's services. Additionally, it is alleged that the defendant, by "implication" and "innuendo," encouraged patients to avoid the plaintiff's services. The plaintiff further states that the defendant has sought to intimidate otherwise satisfied patients to prefer the services of medical doctors instead of those offered by the plaintiff and other chiropractors in general. As a result of these actions, the plaintiff alleges that he has suffered, and continues to suffer, injury to his business, injuries to his contractual relationships with his patients, and injury to his reputation within the community.

To remedy the above violations, the plaintiff prays that this court find a violation of his due process and equal protection rights under the Fifth and Fourteenth Amendments to the United States Constitution. More particularly, he requests that the court award actual damages, that it award costs and attorney's fees as authorized by 42 U.S.C. § 1988, and that the defendant be permanently enjoined from communicating with any present or future patients of the plaintiff. The plaintiff further requests that this court compel the defendant to notify every individual or association that he has contacted concerning the plaintiff's performance as a practitioner and advise such parties that any assertion or intimation that was intended to direct patients away from the plaintiff's care was wrongful and should be ignored.

Invoking this court's pendent jurisdiction, the plaintiff also includes in his complaint a claim that the defendant's action in contacting the plaintiff's patients constituted a tortious interference with the plaintiff's contractual relationships with those patients, and accordingly prays for actual and punitive damages. Further invoking the pendent jurisdiction of this court, the plaintiff alleges that the defendant has libeled and slandered the plaintiff in his profession by representing that the plaintiff fraudulently prescribed unnecessary services and by representing that the plaintiff charged exorbitant fees. To remedy this infraction of state law, the plaintiff prays that this court compel the defendant to contact all recipients of such false publication and retract the disparaging comments concerning the plaintiff's reputation, that the court require the defendant to provide such recipients with a copy of the complaint and the final order of this court in the present action, and that this court award actual and punitive damages.

This action is presently before the court on the defendant's motions for a change of venue pursuant to 28 U.S.C. § 1404(a) and on an additional motion, pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure, to dismiss for failure to state a claim upon which relief could be granted. Initially, the court must address the motion to dismiss pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure. In its motion to dismiss, the defendant asserts that the plaintiff has not stated a claim upon which relief can be granted under § 1983. The defendant further argues that absent a valid federal claim, state claims appended to the federal claim under a theory of pendent jurisdiction must also be dismissed. After careful examination of extensive memoranda filed by both parties bearing on this matter, the court finds it appropriate to determine whether the plaintiff has stated a claim cognizable under 42 U.S.C. § 1983. Finding that the plaintiff has not alleged injuries redressable by 42 U.S.C. § 1983, the court must dismiss the present action in its entirety, dismissing both the purported federal claim and the state claims attached to it under this court's pendent jurisdiction. Given that this court must grant the defendant's motion to dismiss, it is, of course, unnecessary to consider the defendant's motion for a change of venue.

The defendant in its Memoranda in Support of Motion to Dismiss has contended that the plaintiff's complaint is deficient in that it is replete with "broad and conclusory allegations." This court is well apprised that in order to state a claim under § 1983, a plaintiff must go beyond mere recitation of simple conclusions or subjective assertions regarding the defendant's actions. At a minimum, the plaintiff must allege enough specific assertions to at least outline the facts constituting the alleged violation. *See Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979). However, the court is also advised that on a motion to dismiss, the material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1845, 23 L.Ed.2d 404 (1969).

Further, it would be improper for this court to dismiss the complaint unless it is clear that the plaintiff could prove no set of facts in support of his complaint that would entitle him to relief. The court concurs with the defendant that the plaintiff's complaint does repeatedly allege, in a conclusory fashion, that defendant Russek has deprived him of his due process and equal protection rights secured by the Fifth and Fourteenth Amendments to the Constitution, and that the plaintiff characterizes the defendant's allegedly violative acts in a subjective manner. However, despite these stylistic conventions, the plaintiff alleges sufficient facts, adequately describing a course of misconduct by the defendant, to properly state a claim under § 1983.

In its Memoranda in Support of Motion to Dismiss, the defendant next contends that the plaintiff's allegation that Defendant Russek has injured his personal and professional reputation, even if true, would not state a claim under § 1983. The defendant substantiates its position by citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) for the proposition that an allegation of harm to one's reputation, in and of itself, is insufficient to state a claim for relief under 42 U.S.C. § 1983. It is apparently the defendant's contention that that portion of the plaintiff's complaint seeking redress pursuant to § 1983 essentially alleges that defendant Russek has injured Becker's *personal and professional* reputation. As such, it merely alleges an injury to reputation and claims consequential damages, an action that is cognizable only under a defamation theory in the state courts. In order to evaluate the merit of this agreement, it is necessary to scrutinize the Supreme Court's analysis.

In *Paul v. Davis, supra*, the plaintiff's name and picture were circulated by local police chiefs via publications labeling those included as "active shoplifters." The plaintiff, who at the time of publication was charged with shoplifting but was never convicted, brought an action under 42 U.S.C. § 1983, stating that the public classification had deprived him of a liberty interest pro-

tected by the Fourteenth Amendment. He noted that the publication had damaged him in that future employment possibilities were depleted and that he was constantly fearful of being reapprehended by merchants who now imagined him as a shoplifter.

On this set of facts, the Supreme Court rejected the proposition that "the Due Process Clause of the Fourteenth Amendment and § 1983 make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state law claims." *Paul v. Davis, supra* at 699, 96 S.Ct. at 1159. The court further rejected the proposition that the infliction of a "stigma" by state officials, as compared with other tortious acts that could be committed, was so unique a wrong that injuries to reputation alone should be cognizable under § 1983. After narrowing the scope of its opinion with these disclaimers, the court denied that "reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1160.

In making these determinations, the court exhibited the strong-felt need to avoid the " 'constitutional shoals' that confront any attempt to derive from congressional civil rights statutes a body of general federal tort." *Id.* at 701, 96 S.Ct. at 1160.

The court undertook a survey of its previous decisions construing those interests included within the meaning of either "liberty" or "property." In this manner, it determined that those interests that have been found to have been included within these terms attain that constitutional status by the fact that they have been initially recognized and protected by state law. *Id.* at 711, 96 S.Ct. at 1165. The court, then, prevented the federalization of the existing body of state tort law by requiring the alteration of a protected, state-conferred status to trigger the protections of the Due Process Clause. The court relied on this distinction in analyzing its previous decisions in a consistent manner:

In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the *recognition and protection previously afforded by the State*, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which the respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. *Id.* at 711, 96 S.Ct. at 1165. (emphasis supplied)

The court determined further that Kentucky law did not extend to the plaintiff any specific legal guarantee of present enjoyment of reputation that had been altered by state action. Finding no injury by a State officer that resulted in a change of status "vouchsafed" by the State, the court found that Fourteenth Amendment protections were not implicated. *Id.* at 712, 96 S.Ct. at 1165.

Applying the *Paul* analysis to the present case, this court is compelled to decide whether the plaintiff has merely alleged an injury to his reputation, which would be redressable only under the state's law of defamation, or whether the plaintiff has in addition to pleading reputational damage, alleged injury to a state protected interest. It is the additional element of the alleged injury to an interest or status conferred by state law, in excess of the traditional, state law tort claim, that activates due process considerations. *See Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Reilly v. Leonard*, 459 F.Supp. 291 (D.Conn.1978).

In the instant case, the plaintiff has not alleged that in addition to the purported reputational injury, that the defendant has deprived him of his state-conferred license that allows him to practice as a chiropractor. Instead, he has alleged a reputational injury and consequential damages

in the form of loss of income. This court, especially given the explicit admonition in *Paul* to avoid the derivation of a general federal tort law from the civil rights statutes, fails to find that the defendant has alleged the injury to a state-conferred status necessary to distinguish this case from one traditionally cognizable only under state law.

The court is impressed with the similarity of the factual situation in this case and that faced by the court in *Poirier v. Hodges*, 445 F.Supp. 838 (M.D.Fla.1978). In that case, a hearing aid dealer brought suit under 42 U.S.C. §§ 1983, 1985, 1986, alleging that two state employees conspired to destroy his business and violate his constitutional rights. Specifically, the plaintiff alleged that the defendant contacted buyers of the hearing aids and instructed them not to pay their purchase obligations under the contract, that they contacted the assignee bank of the contracts and told the bank officials that the contracts were fraudulently obtained, and that they instructed bank officials that the plaintiff was under investigation and might lose his state licensing. The court in *Poirier* interpreted *Paul v. Davis, supra* to require that a plaintiff allege the infringement of a property interest under state law, or a liberty interest under the Bill of Rights, in conjunction with his injury to reputation, in order to state a federally redressable claim for stigmatization. In *Poirier*, the court, finding that the plaintiff had not stated a claim cognizable under § 1983, determined that he had failed to meet the "stigma-plus" test that would distinguish a federally cognizable claim from one redressable in state courts. *Id.* at 843.

Apparently conceding the validity of the above analysis, the plaintiff nevertheless cites authority for the proposition that the *Paul* analysis would find a claim of defamation by state officials actionable under § 1983 if the state law extended to the plaintiff any "legal guarantee of present engagement of reputation." *See Marrero v. City of Hialeah*, 625 F.2d 499, 514 (5th Cir. 1980), quoting *Paul v. Davis, supra*, 424 U.S. at 711, 96 S.Ct. at 1165. Concededly, an examination of that case reveals that the *Marrero* court found that business reputation had received such special legal recognition under Florida law. However, given the admonition of *Paul* to confine the expanse of federalized tort law, this court would require a more explicit demonstration of Virginia's recognition of any legal guarantee of present engagement of business reputation than the intangible evidence found by the *Marrero* court.

The present plaintiff contends that Virginia has indeed recognized such legal guarantees of business reputation. Upon examination of the authority cited, however, this court is unable to concur with this line of reasoning. For example, the plaintiff directs the court's attention to Va.Code Ann. 18.2–499, which, with its remedial counterpart, Va.Code Ann. 18.2–500, prohibits, and provides a cause of action for, those aggrieved by conspiracies to injure others in their trade, business, or profession. However, it appears in the instant case that this statute does not create a protected interest against investigative-administrative arms of the state, as officials of a public body who act within the scope of their employment are not considered to be conspiring together for the purposes of this statute. *Fowler v. Department of Education*, 472 F.Supp. 121 (E.D.Va.1978). Nor does the statute, speaking in terms of "conspiracy," apply to the present accusations against the single defendant. Upon examining the authority cited by the plaintiff asserting that a more general protection is afforded business reputation, this court is unable to find any authority asserting such protection in a manner explicit enough to justify federalizing the plaintiff's cause of action in the instant case. *See Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858 (E.D.Va.1980). Indeed, the plaintiff cites some authority that examines the Va.Code Ann. § 18.2–499 not in terms of the nature of the protection it affords certain property from certain tortfeasors, but in the context of the applicable statute of limitations. *See Federated Graphics Cos. v. Napotnik*, 424 F.Supp. 291 (E.D.Va.1976).

Other authority cited by the defendant not construing Va.Code Ann. § 18.2–499 also does not reveal the existence of a special "legal guarantee," but merely affirms the existence of a state common law remedy, which under the *Paul* analysis, was a persuasive reason not to give the action federal cognizance. *See Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192, 196 (1956). Further, absent some more explicit manifestation of special protection above common law remedies in the law of Virginia, this court does not find authority examining the protection afforded a manufacturer's "goodwill" under "fair trade" legislation to be presently pertinent. *See Standard Drug Co. v. General Electric Co.*, 202 Va. 367, 117 S.E.2d 289 (1961). And, while the court agrees that loss of business profits are treated as an injury to property under Virginia law, for statute of limitation purposes, *see Blackwelder v. Millman*, 522 F.2d 766, 774 (4th Cir. 1975), this fact similarly does not persuade the court to provide an additional forum for recovery in addition to that provided by the state.

In sum, this court is persuaded by *Paul's* admonition to dismiss the present action and avoid the intrusiveness of a burgeoning federalization of what was formerly cognizable under state tort law. Despite the plaintiff's characterizations, the court is unable to view the present case as anything other than one cognizable in state court under a theory of defamation. Thus, the availability of an adequate redress in that forum, a critical consideration in the *Paul* analysis, provides an additional reason to grant the defendant's motion to dismiss.

█ The court further notes that the plaintiff has appended claims of tortious interference with contractual relationships and libel and slander under state law, invoking this court's pendent jurisdiction. As this court has dismissed the purportedly federal claim, these state claims should similarly be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 546 (1966). Given that the court has granted the defendant's motion to dismiss, it is unnecessary to consider the mo-

tion for the change of venue. Each party shall bear its own costs.