## NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Plaintiff,

v.

## Amos Harley JONES and Paulette Carol Jones, Defendants.

### Civ. A. No. 83–0063–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 18, 1984.

Howard C. McElroy, Abingdon, Va., for plaintiff.

Randall Eads, Lebanon, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Nationwide Mutual Fire Insurance Company, brought this action against Amos Harley Jones and his wife, Paulette Carol Jones, alleging that the defendants willfully denied their responsibility for and made false statements regarding their loss from a fire on September 24, 1982 which caused extensive damage to their home. Relying upon these statements, Nationwide paid thirty-three thousand dollars ($33,000) to the defendants under a homeowner's policy. After making payment, the plaintiff discovered the misrepresentations and now seeks restitution upon theories of money had and received, and fraud. Jurisdiction over the subject matter of this controversy is premised upon diversity of citizenship, 28 U.S.C. § 1332. Nationwide also has alleged that the defendants conspired to willfully and maliciously injure the plaintiff in its reputation, trade and business which would entitle the injured company to treble damages, costs, and attorney's fees under the Virginia Conspiracy Statute. Va.Code § 18.2–499 and –500 (Repl.Vol.1982 and Supp.1983). The court dismissed a claim of racketeering under 18 U.S.C. § 1964 and granted a preliminary injunction that prohibited the defendants and Ira S. Mullins, Jr., a witness, from threatening or endan-

gering the lives of each other and their families and that prevented the defendants from disposing of the money received from Nationwide, or its proceeds.

A trial was held on September 20 and 21, 1983, and at the close of all the evidence, counsel for the defendants moved for a directed verdict which the court overruled at that time. A jury returned a special verdict in favor of the plaintiff on all counts and for damages of $33,667.79. In light of the jury verdict, the defendants move this court for judgment notwithstanding the verdict pursuant to Rule 50(b), Fed. R.Civ.P. This matter is ready for disposition.

The defendants contend that the court should grant their motion for a directed verdict as to the allegation of conspiracy because Nationwide failed to prove the elements of the conspiracy and actual malice. Even if the evidence shows that the defendants deliberately burned their dwelling, they argue that their intention was to collect the insurance proceeds, not to willfully harm the reputation, trade or business of Nationwide, as required under Va.Code § 18.2–499.

This claim is based upon the conspiracy statute, which provides in pertinent part: "(a) Any two or more persons who shall combine, associate, agree, mutually undertake or concert together *for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever, ...,* shall be jointly and severally guilty of a Class 3 misdemeanor ...." Va.Code § 18.-2–499(a) (emphasis added). The succedent section provides for civil relief. "Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel; ...." Va.Code § 18.2–500(a). A "person" under

the statute means any person, firm, corporation, partnership or association. Va.Code § 18.2–501(b). In the plain meaning of these provisions, if the defendants conspired to maliciously injure the reputation, trade, business or profession of Nationwide in any manner, then Nationwide may sue and receive treble damages, costs, and attorney's fees.

Resolution of the defendant's contention involves interpreting the phrase "injure the reputation, trade, business or profession of another." Particularly, does presenting a fraudulent claim to an insurance company upon which the company pays the insured without knowledge of the misrepresentations maliciously injure its reputation, trade or business under the meaning of the statute? There is no legislative history to assist the court,[1] nor has the Virginia Supreme Court decided a case based upon these statutes. However, several federal courts have interpreted these provisions.

In the first reported case concerning the statute, a printing broker sued officers of a Virginia corporation for conspiring to injure its business and for malicious prosecution of an involuntary bankruptcy suit. The defendants moved to dismiss the action because the statute of limitations barred the adjudication. Judge Merhige held, *inter alia,* that the conspiracy claim was not time barred. The court interpreted the statute as providing "a remedy for wrongful conduct directed at the business." *Federated Graphics Co. v. Napotnik,* 424 F.Supp. 291, 293 (E.D.Va.1976). Since injuring a business damages a person's property, the five-year statute of limitations applies. The court rejected the contention that the statute codified the common law tort action of malicious prosecution, noting that the statute applies to *any* malicious conduct injuring business. *Id.* at 294 (emphasis in original). Another court developed a standard on motion to dismiss to determine whether the statute applied to a

---

1. Two legal scholars searched without success for legislative history on § 18.2–499. "The authors' attempts to find any legislative history on § 18.2–499 were unsuccessful and the legislative clerk of the House of Delegates assured us that none existed. The legislative history of Virginia acts is generally not recorded." Ulrich & Howard, *Injuries to Business under the Virginia Conspiracy Statute: A Sleeping Giant,* 38 Wash. & Lee L.Rev. 377, 378 n. 13 (1981).

particular set of facts. Judge Clarke used a two-prong analysis: First, what is the "real nature" of the suit? Second, what monetary losses does the plaintiff incur as a result of the alleged conduct? The court concluded that the "real nature" of the action was a personal claim for libel and slander and that the plaintiff had not alleged that the conspiracy caused his damages. Consequently, the court dismissed the conspiratorial claim. *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364, 373–75 (E.D.Va.1979). In a third case averring harm to a person's reputation, the court reiterated that these statutes aim at injuries to business, trade, or profession, not at personal reputation. *Ward v. Connor*, 495 F.Supp. 434, 439 (E.D.Va.1980), *rev'd on other grounds*, 657 F.2d 45 (4th Cir.1981). A literal interpretation excludes "employment" from the scope of the act. *Campbell v. Board of Supervisors*, 553 F.Supp. 644, 645 (E.D.Va.1982). Moreover, the provisions are not a legal guarantee of business reputation which will create a property interest within the meaning of due process of law under the fourteenth amendment and 42 U.S.C. § 1983. *Becker v. Russek*, 518 F.Supp. 1040, 1045–46 (W.D. Va.1981). Thus, the federal courts generally have interpreted the statute to create an action for any malicious conduct aimed at injuring a person's business.

The court searched for other persuasive authority. As two legal scholars observed, the substantive provisions of Va.Code § 18.2–499 are identical to Wis.Stat.Ann. § 134.01 (West 1974),[2] except that the Virginia remedies are harsher. Ulrich & Howard, *supra* note 1, at 378. The courts and attorney general of Wisconsin have applied their statute to an agreement between several publishers to induce another newspaper publisher to reduce his advertising rates or lose customers, *see State v. Huegin*, 110 Wis. 189, 85 N.W. 1046 (1901); and to picket to persuade customers to boycott particular stores or to discourage pa-

tronage, *see* 24 Op. Att. Gen. 613 (1935); 10 Op. Att. Gen. 1031 (1921). The Court of Appeals of Wisconsin recently stated in dicta, "it is the conspiracy to injure Segall's business reputation and the damage which results from the conspiracy, not the means used, that constitute an actionable claim under sec. 134.01." *Segall v. Hurwitz*, 114 Wis.2d 471, 339 N.W.2d 333, 340 (1983). Under this theory, the court on a motion for summary judgment concluded that the general limitation of six years applied to the conspiracy claim rather than the personal or property injury limitations.

The history of the Virginia statute also indicates the type of activities for which it seeks to provide a remedy. The state antitrust statutes and the conspiracy statute are closely related, for the latter originally was a part of the antitrust law. *See* Va. Code § 59–21.1 (Supp.1962). The General Assembly separated the two statutes two years later and placed the conspiracy provisions in the criminal portion of the Virginia Code. The legislature also added the specific remedies of mandatory threefold damages, injunction, and costs and attorney's fees. *See* Va.Code § 18.2–74.1:1(a)(b) (1964). The civil sanctions appear to be remnants of the antitrust statutes. *Cf.* Va.Code § 59.26–32 (1950). *See generally* Ulrich & .Howard, *supra* note 1, at 407.

■ Considering these authorities, this court interprets the Virginia Conspiracy Statute to apply to any malicious conduct that injures business. However, such conduct must be directly aimed toward damaging the business, trade, reputation or profession: The injury must not be a result or secondary effect of an action taken for mere personal gain. To illustrate the direct injuries, the court mentions three examples, which are by no means exclusive: (1) interfering in business activity such as boycotts and pickets; (2) injuring a company's tradename and good will; (3) stealing customer lists and trade secrets. These statutes are inapplicable to one isolated

---

**2.** Wis.Stat.Ann. § 134.01 (West 1974) provides as follows:

Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or

maliciously injuring another in his reputation, trade, business or profession by any means whatever, ... shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

incident in which a combination of persons defraud a company for their own personal enrichment. In a case such as the one at bar, any injury to its business, trade or reputation which the insurance company suffered is a consequential loss from the defendants' action to recover the insurance proceeds. The statute is not aimed at this type of loss.

Accordingly, the court grants the defendants' motion for judgment notwithstanding the verdict as to the conspiracy claim for failure to state a claim upon which relief can be granted.

The defendants have asserted other grounds for their motion for judgment notwithstanding the verdict. The court does not consider any of the other grounds as needing any additional comment since the court stated on the record its reasons for the various rulings in the course of the trial and therefore, the other grounds for the motion are summarily overruled.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.